UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CASHMAN SCRAP & SALVAGE, L.L.C.**          **CIVIL ACTION**

**VERSUS**                                   **NUMBER 07-7068**

**BOIS D'ARC ENERGY, INC., ET AL.**          **SECTION "L" (3)**

## ORDER & REASONS

Currently pending before the Court is Bois d'Arc's Motion for Summary Judgment (Rec. Doc. 117). The Court heard oral argument on the motion and took it under advisement. For the following reasons, the motion is DENIED.

**I.   BACKGROUND**

This case arises out of a maritime construction project at Main Pass 21 ("MP21") near the mouth of the Mississippi River. Bois d'Arc Energy, Inc. ("Bois d'Arc") owned certain wells and pipelines in the area that were damaged during Hurricane Katrina. Bois d'Arc hired OPE, Inc. ("OPE") to act as a project manager for certain repairs to the wells and pipelines. OPE designated Timothy Lee, an OPE employee, to serve as the project manager for the repairs.

Shortly before his role as the MP21 project manager for OPE, however, Timothy Lee had independently approached the Plaintiff, Cashman Scrap and Salvage ("Cashman"), in order to broker a deal by which Cashman would provide marine barges and various other equipment to Bois d'Arc for the MP21 repairs. Following Lee's inquiry, Cashman prepared Lee a quote of approximately $15,000 per day for use of its equipment, depending on the particular equipment needed for the repairs. Lee, on behalf of his independent brokerage firm, Trendsetter Resources, LLC, added $5,000 to the quote for per-day brokerage fees, and Cashman then submitted the quote (approximately $20,000 per day) to Bois d'Arc. Shortly thereafter, Bois

d'Arc hired OPE to oversee the repairs. OPE assigned Timothy Lee to serve as project manager.

The instant litigation arises out of three primary contracts that resulted from the parties' business dealings. The first contract is a Master Service Agreement between Bois d'Arc and OPE, Inc., by which OPE agreed to provide project management services for the MP21 repair job. The second contract is a brokerage agreement between Cashman and Trendsetter Resources, by which Cashman agreed to remit a portion of its hire fees (approximately $5,000 per day) to Trendsetter as commission. Finally, the third contract at issue is the Master Time Charter Agreement between Cashman and Bois d'Arc, by which Bois d'Arc agreed to pay Cashman a lump sum per-day rate for the use of its barges, cranes, and various other equipment necessary to complete the repairs.

Through an internal investigation in late November 2006, OPE became aware of the independent brokerage agreement between Cashman and Trendsetter. After learning that Trendsetter was receiving a commission directly from Cashman, OPE fired Lee and subsequently informed Bois d'Arc of the existence of the brokerage agreement. Bois d'Arc refused to pay the remaining balance due to Cashman under the charter agreement (leaving approximately $630,000 unpaid, or, according to Bois d'Arc, roughly the total amount of Trendsetter's brokerage commission).

Bois d'Arc argues that it was not aware of Timothy Lee's dual role in the transactions, and that Lee's misrepresentations and/or nondisclosures constitute fraud, voiding the contract between the parties. Bois d'Arc further argues that it could have obtained a more favorable rate if not for the brokerage fee. Bois d'Arc contends that, by paying Cashman's full rate--including Trendsetter's brokerage fees--and OPE's fees for managing the project, Bois d'Arc was essentially paying twice for the same services.

On October 19, 2007, Cashman filed the instant suit against Bois d'Arc, OPE, and

Trendsetter, alleging various theories of liability against all parties to recover the remaining amounts due under the charter agreement. Bois D'Arc filed claims against OPE, Trendsetter, and Timothy Lee for indemnity in the event that it is held liable for the unpaid sums. Similarly, OPE filed a claim for indemnity against Trendsetter in the event that OPE is held liable for the unpaid sums. Finally, Trendsetter has asserted a counterclaim against Cashman seeking the unpaid sums under the brokerage agreement.

## II.   PRESENT MOTION

Bois d'Arc has moved for summary judgment against OPE. Bois d'Arc seeks indemnification from OPE in the event that it is held liable to Cashman, because, as Bois d'Arc contends, OPE breached its fiduciary duty to Bois d'Arc when Timothy Lee, an OPE employee, entered into a separate brokerage deal with Cashman. According to Bois d'Arc, Lee was acting in the course and scope of his employment when he negotiated a separate brokerage agreement with Cashman on behalf of Trendsetter. Alternatively, Bois d'Arc contends that, even if Lee went beyond the course and scope of his employment, OPE had a duty to supervise its employee and either knew or should have known about his independent agreement with Cashman.

OPE contends that it had no way of knowing what agreements Lee entered into with Cashman because Lee concealed the brokerage agreement from OPE. According to OPE, Lee was not acting in the course and scope of his employment when he negotiated the independent brokerage agreement with Cashman on behalf of Trendsetter. Further, OPE notes that, as soon as it found out that Lee was receiving a commission directly from Cashman, OPE fired Lee and alerted Bois d'Arc to the conflict.

## III.   LAW AND ANALYSIS

Summary judgment is appropriate in a case if "there is no genuine issue as to any

material fact." Fed.R.Civ.P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issue of material fact." *McCall v. Focus Worldwide Television Network, Inc.*, 2008 WL 3366080, *3 (E.D. La. Aug. 8, 2008). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

In the instant case, the Court finds that summary judgment is inappropriate, as the dispute between these parties involves several genuine issues of material fact. Bois d'Arc contends that, based on the communications between the parties and OPE's role as project manager, OPE either knew or should have known that Timothy Lee was acting in a dual capacity and was receiving independent brokerage fees from Cashman. Further, Bois d'Arc argues that Lee was acting in the course and scope of his employment and that, had OPE implemented reasonable supervision, it would have learned of his independent brokerage agreement in time to prevent significant additional losses to Bois d'Arc. In response, OPE contends that, based on certain other communications between the parties, Bois d'Arc either knew or should have known that Lee was acting in a dual capacity even before Bois d'Arc hired OPE to serve as project manager. In addition, OPE argues that Lee was acting outside the course and scope of his employment when

he negotiated a brokerage agreement on behalf of his own company, Trendsetter Resources. The Court finds that the resolution of these issues will necessarily depend on the facts presented at trial and the credibility of the various witnesses. Accordingly, summary judgment is inappropriate.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Bois d'Arc's Motion for Summary Judgment (Rec. Doc. 117) is hereby DENIED.

New Orleans, Louisiana, this 30th of April, 2009.

                                    UNITED STATES DISTRICT JUDGE